Zimmerman, J.
 

 Section 35, Article II, of the Constitution of Ohio reads in part:
 

 “For the purpose of providing compensation to workmen and their dependents, for death, injuries or occupational disease, occasioned in the course of such workmen’s employment, laws may be passed establishing a state fund to be created by compulsory contribution thereto by employers, and administered by the state, determining the terms and conditions upon which payment shall be made therefrom * * *. Laws may be passed establishing a board which may be empowered to classify all occupations, according to their degree of hazard, to fix rates of contribution to such fund according to such classification, and to collect, administer and distribute such fund, and to de
 
 *429
 
 termine all rights of claimants thereto * * *. Such board shall have full power and authority to hear and determine whether or not an injury, disease or death resulted because of the failure of the employer to comply with any specific requirement for the protection of the lives, health or safety of employes * *
 

 While the same is by no means dispositive of this case, the joint committee sponsoring the adoption of the above constitutional amendment, comprised of representatives of both employers and employees, used the following argument, among others, in urging its merits upon the people of Ohio:
 

 “It assures every worker compensation for injuries or death arising out of and in course of employment, backed by state law and state administration without necessity for recourse to law suits or employment of attorneys or payment of court costs.”
 

 Outlining in detail the various provisions of the Workmen’s Compensation Act would seem superfluous. One of the main objects sought to be accomplished by its enactment was to provide a speedy, simple and inexpensive method to compensate workmen (or their dependents in case of death) for certain disabilities sustained in the course of and by reason of their employment.
 

 In keeping with an enlightened age the act was designed to create a new system, fair to both employee and employer, and to do away with the vexatious and protracted litigation which had proved so costly, exhaustive and unsatisfactory, oftimes resulting- in great injustice. Material concessions were made by both employee and employer for the ultimate good of both.
 

 This court has definitely held that the Industrial Commission is essentially an administrative board.
 
 State, ex rel. Yaple,
 
 v.
 
 Creamer, Treas.,
 
 85 Ohio St., 349, 401, 97 N. E., 602, 39 L. R. A. (N. S.), 694;
 
 Fassig
 
 v.
 
 State, ex rel. Turner, Atty. Genl.,
 
 95 Ohio St., 232, 116 N. E., 104. There is no requirement that its per
 
 *430
 
 sonnel be members of tbe legal profession. It is given wide latitude in rule-making powers, and in regulating the practice before it. Sections 871-10, 871-22 (7), 1465-44, 1465-111, General Code.
 

 As an emphasis upon the informality of the proceedings before the Industrial Commission, Section 1465-91, General Code, recites:
 

 “Such commission shall not be bound by the usual common law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided; but may make the investigation in such manner as in its judgment is best calculated to ascertain the substantial rights of the parties and to carry out justly the spirit of his [this] act *
 
 *
 

 In the vast majority of instances no special skill is required in the preparation and presentation of claims. Ordinarily they consist of statements and affidavits submitted by the employer, the employee,, or the latter’s dependents, and by others having knowledge of the facts, accompanied by the reports of attending physicians or surgeons, on forms prepared and furnished by the commission. Frequently the commission has its own representative conduct an independent investigation of the particular claim for the purpose of ascertaining the true situation, and sometimes there are informal oral hearings before a referee. Validity of the claim having been established, compensation is paid on the basis prescribed by the statutes, and the incident is closed.
 

 Since the inception of the Workmen’s Compensation Act it has been common practice for laymen to assist an injured or diseased workman or his dependents in the submission of a claim. Often this is done as an accommodation by representatives of the employer or by representatives of an organization to which a claimant may belong, and such usually simple services are for the most part performed in an expeditious and satisfactory manner. In our judgment this is not the
 
 *431
 
 practice of law; but in so holding it is neither our intention nor purpose to modify the definition of the practice of law announced in the first paragraph of the syllabus of
 
 Land Title Abstract & Trust Co.
 
 v.
 
 Dworken,
 
 129 Ohio St., 23, 193 N. E., 650.
 

 Of course,-exceptional cases may arise from time to time where legal problems are involved in the presentation of claims, but it is the ordinary claim and not the exceptional one which now engages our attention. Anticipating the exceptional would hardly be practicable.
 

 Administrative boards and commissions are common to both federal and state governments. There are many of them, and the Industrial Commission of Ohio is included in that category. Without entering into an extended discussion, let it be noted that the representation of others before such bodies has been determined many times not to constitute the practice of law, and they are conceded the power to promulgate rules governing the practice before them.
 

 In the case of
 
 Louisville & Nashville Rd. Co.
 
 v.
 
 SlossSheffield Steel & Iron Co.
 
 (C. C. A., 5), 295 F., 53, affirmed, 269 U. S., 217, 46 S. Ct., 73, 70 L. Ed., 242, the court had occasion to discuss the prerogatives of the Interstate Commerce Commission. At page 56 of the opinion, this language appears:
 

 “The Commission is an administrative body. The validity of its proceedings is not dependent upon compliance with procedural rules as to pleading and practice which prevail in courts of law. It ‘may conduct its proceedings in such manner as will best conduce to the proper dispatch of business and to the ends of justice.’ ” Such language is appropriate to the Industrial Commission of Ohio, up to the point where a claim is first denied within the purview of Section 1465-90, General Code.
 

 A consideration of that section brings us to a more difficult problem. It stipulates that where the Indus
 
 *432
 
 trial Commission finds “it has no jurisdiction of the claim and has no authority thereby to inquire into the extent of disability or the amount of compensation, and denies the right of the claimant to receive compensation, or to continue to receive compensation for such reason, then the claimant may within thirty days after receipt of notice of such finding of the commission, file an application with the commission for a rehearing of his claim * *
 

 The rehearing thus provided for presents a very different matter from the original hearing or investigation.
 

 Continuing, Section 1465-90, General Code, recites: “Such hearing shall be had and the evidence for and against the allowance of the claim submitted as in the trial of civil actions. The commission shall pass upon the admissibility of evidence, but either party may at the time make objection and take exception to the rulings of the commission thereon, and if the commission refuses to admit any evidence, the party offering the same shall state the nature of such evidence and the matter which such party proposes to prove thereby, and such statement shall be made a part of the record of such rehearing. * * *” •
 

 What is commonly termed “an appeal” to the Common Pleas Court is given, for if upon rehearing the commission adheres to its finding “that it has no jurisdiction of the claim and no authority to inquire intd the extent of disability or amount of compensation claimed, then the claimant, within sixty days after receipt of notice of such action of the commission, may file a petition in the common pleas court
 
 *
 
 * #.
 

 “Within ten days after the filing of the answer the industrial commission shall certify to such court a transcript of the record of such rehearing, and the court, or the jury, under the instructions of the court, if a jury is demanded, shall determine the right of the claimant to participate or to continue to participate
 
 *433
 
 in such fund upon the evidence contained in such record and no other evidence * *
 

 Referring to the report of the governor’s investigating committee on the Workmen’s Compensation Act, under date of December 31,1934, we are in accord with the following observation embraced therein anent the rehearing under Section 1465-90:
 

 “Since such cases must be prepared to conform to court procedure, and since under the law a representative of the Attorney General acts for the Industrial Commission in court hearings, it is highly important that from the outset of taking testimony on the applications competent and experienced legal talent be in charge, in order that all relevant and competent facts may be developed and appropriate objections interposed into the record as to all incompetent and irrelevant matters that may be attempted to be placed in the record.”
 

 In all fairness, it must be conceded that the preparation of a rehearing record should be in complete charge of an attorney at law. It presents exactly the kind of work for which his training and experience peculiarly fit him. Such record constitutes the entire evidence upon which the merits or demerits of a claim can be determined by a court and jury. If a record be poorly and inexpertly prepared, the rights of interested parties may be seriously prejudiced. Its formation unquestionably comes within any well considered and complete definition of the practice of law.
 

 We have given no extended consideration as to whether plaintiffs have pursued a proper remedy, for the cogent reason that defendants have failed to raise the question in any way.
 

 However, this court has recognized the applicability of the writ of prohibition to the Industrial Commission.
 
 State, ex rel. Wolf Run Goal Co.,
 
 v.
 
 Industrial Commission,
 
 110 Ohio St., 487, 144 N. E., 272;
 
 State, ex rel. Firestone Tire & Rubber Co.,
 
 v.
 
 Duffy
 
 
 *434
 

 et al., Industrial Commission,
 
 114 Ohio St., 702, 152 N. E., 656.
 

 Our conclusion is that appearances and practice before the Industrial Commission do not ordinarily or properly constitute the practice of law up to the time when a claimant first receives notice of the disallowance of his claim under Section 1465-90, General Code, and are subject to the regulation and control of the Industrial Commission as granted by statute. Thereafter, rehearing proceedings before the commission do constitute the practice of law and must be conducted exclusively and personally by an attorney or attorneys at law, duly admitted to practice, and the defendants are therefore prohibited from recognizing or entertaining representation, in the particular noted, by those failing to meet such qualification.
 

 The writ will be allowed in part as indicated.
 

 Writ allowed in part.
 

 Weygandt, C. J., Stephenson, Williams, Jones, Matthias and Day, JJ., concur.