Per Curiam.

The objections of the respondent to the findings and recommendation of the Board of Commissioners on Grievances and Discipline raise three issues for our determination.
The respondent alleges that the proceedings before the panel were unconstitutional and deprived the respondent of due process. This issue was raised and rejected in Mahoning County Bar Assn. v. Franko (1958), 168 Ohio St., 17. The subject was considered in detail in that case and merits no further consideration here.
The respondent claims also that the findings of the board are not supported by the evidence. The board determined that respondent had been guilty of misconduct within the meaning of Rule 27 of the Supreme Court of Ohio in that he violated Canons 26, 27, 28, 29, 34 and 35 of the Canons of Professional Ethics adopted by this court on November 13, 1952. An exam *445 ination of the record indicates substantial evidence to support these findings.
Canon 34 provides that “no division of fees for legal services is proper, except with another lawyer, based upon a division of service or responsibility.”
The following testimony of respondent before the board establishes that there was a division of fees in all cases referred by Sullens:
‘ ‘ Q. And you say it used to be not more than a third. What is the rough percentage you would use these days? A. Well, I would try to see that he never got any more than 45 or so per cent of it, if I could avoid it. It is up to his demand. So far, like I say, we have gotten alone fine. So, I think he has gotten more than a half, even.
i 6 * * #
“ [Q.] * * *: The percentage arrangement you now have with him, sort of resulting from pressure in the market place, what you have to bid for it to get his business?
“The witness: That is definitely right.
(( # * #
‘ ‘ [Q-3 * * *: Is this a fair statement: In the course of time you went from sort of a flat fee into percentages which over a period of time, because of his upping his demands, results in a percentage today of 50 per cent?
“The witness: It is almost that high * *
In his brief in support of his objections, respondent claims that this is not “fee-splitting” but merely a division of the compensation based upon the amount of work done. This contention might have weight if the compensation was divided between lawyers, but Canon 34 forbids all division of fees between an attorney and a layman.
Goodman v. Beall et al., Indus. Comm. (1936), 130 Ohio St., 427, set down the law in this field prior to In re Brown, Weiss and Wohl (1963), 175 Ohio St., 149. In the Goodman case, a writ of prohibition against the members of the Industrial Commission was allowed in part, restraining the members of the commission from permitting laymen to appear before them in a representative capacity for a claimant after he had received notice that his claim had been disallowed. The court *446 refused to require the commission to prohibit the appearance of laymen prior to that point in the proceedings.
Respondent contends that, since laymen were permitted to practice before the commission, a lawyer representing a claimant on an Industrial Commission case could ethically share his fee with a layman until the decision in the Brown, Weiss and Wohl case. This is a non sequitur.
Although it may be true that the prohibition in Canon 34 is limited to fees received for legal services, services to a claimant in an Industrial Commission case were always legal services when rendered by a lawyer. There are many areas in which personal services do not constitute the practice of law when done by a layman but which are the practice of law when performed by an attorney, e. g., work in the fields of income tax and trademarks. The respondent seemed well aware that his work constituted legal services since he contracted with claimants in his name as an attorney. Authorizations from claimants were obtained in the name of “Mr. Kenneth Agee, Attorney at Law.” He, therefore, could not ethically divide his fees for such services with a layman, even though the layman could have performed the same services.
The relationship between respondent and laymen, such as Sullens, in Portsmouth, and one Griffith, in Ironton, constituted a violation of Canons 27 (soliciting professional employment through touters), 28 (stirring up litigation through agents), and 35 (intermediaries). It is apparent that these men were valuable not because of the work that they performed but because they were well known in their communities. Their purpose was to obtain industrial claimants in Ironton and Portsmouth as clients for respondent. Although such conduct is more subtle than “ambulance-chasing,” the purpose and end result are the same.
The aim of Canon 35 is to preserve the personal relationship that should exist between a lawyer and his client. The testimony of both respondent and Sullens disclosed that claimants coming to see Sullens became clients of respondent by signing a contract upon which his name appeared, without ever meeting him. To permit such conduct is a clear violation of the canon. One of respondent’s clients testified as follows:
*447 “Q. Have you ever met Mr. Agee? A. No, I don’t think I ever met him at his office.
“Q. Would you know Mr. Agee if you saw him? A. No I wouldn’t.”
The board found also that there was a violation of Canons 26 and 29. Canon 29 is entitled: “Upholding the Honor of the Profession.” It would seem that the violation of any canon would also be a violation of this one. Canon 26 requires that the same principles of ethics should bind the lawyer when he appears before a body other than a court.
Respondent’s final objection is that the recommendation of the hoard is too harsh. Indefinite suspension is a harsh penalty. However, this is not a situation where there has been one transgression in a long and otherwise unblemished career. Respondent has used laymen to funnel clients to his office for most of his professional life. The recommendation of the board is in line with the discipline approved by this court in Dayton Bar Assn. v. Hersog (1962), 173 Ohio St., 313, and Cleveland Bar Assn. v. Fleck (1961), 172 Ohio St., 467, both of which involved practitioners in the field of workmen’s compensation.
Based on the record before it, this court concludes that in justice to the public and to the profession it is the court’s unpleasant but clear duty to overrule the objections of the respondent and to approve the recommendation of the board that the respondent he suspended indefinitely from the practice of law in this state.

Report confirmed and judgment accordingly.

Taft, C. J., Zimmerman, Matthias, O’Neill, Griffith and Gibson, JJ., concur.
Herbert, J., concurs except as to the penalty, which should be a public reprimand.