OPINION
On September 15, 1999, Debrah Lindner was issued a violation notice from the Enforcement Division of the Ohio Department of Liquor Control. Ms. Lindner was the liquor permit holder for premises known as the Blockhouse, a bar in Portsmouth, Ohio. The notice stated that investigators had inspected the bar and as a result, a citation was being issued for allowing and/or permitting gambling on the premises. On December 7, 1999, Ms. Lindner was mailed a notice of a hearing to determine whether her liquor permit(s) would be suspended or revoked for the following alleged violations:
 Violation #1 — On September 15, 1999, your agent and/or employee, Allen Browning and/or your unidentified agent and/or employee, did permit and/or allow in and upon the permit premises, gaming on a game and/or scheme of skill and/or chance, to wit, football spot cards-in violation of 4301:1-1-53 a regulation of the Ohio Administrative Code.
 Violation #2 — On September 15, 1999, your agent and/or employee, Allen Browning and/or your unidentified agent and/or employee, did permit and/or allow in and upon the permit premises, gaming on a game and/or scheme of skill and/or chance, to wit, payoff records-in violation of 4301:1-1-53 a regulation of the Ohio Administrative Code.
A hearing was held before the Ohio Liquor Control Commission ("commission"), at which Ms. Lindner's husband and manager of the Blockhouse, Karl Lindner, attended and admitted to the above charges. On December 16, 1999, the commission issued its order, finding Ms. Lindner had violated the above regulation. The commission revoked Ms. Lindner's permit(s).
On December 22, 1999, Ms. Lindner filed a "MOTION FOR RECON-SIDERATION OF PENALTY" with the commission, indicating that she did not deny football spot cards and records characterized as payoff records were discovered on the premises. However, Ms. Lindner asserted the penalty of revocation was "quite" severe and requested that the commission reconsider such penalty. The commission denied Ms. Lindner's motion for reconsideration.
Ms. Lindner appealed the commission's order to the Franklin County Court of Common Pleas pursuant to R.C. 119.12. On November 20, 2000, the common pleas court issued a decision and judgment entry finding the commission's order was supported by reliable, probative and substantial evidence. The common pleas court noted that Ms. Lindner had admitted to the charges and that there was no need for further evidence. The common pleas court concluded that under R.C. 4301.25(A), the commission had the authority to revoke Ms. Lindner's permit(s) and, therefore, the court had no authority to modify such penalty.
Ms. Lindner (hereinafter "appellant") has appealed to this court, assigning the following errors for our consideration:
 I. THE COMMON PLEAS COURT ERRED IN FINDING THE DECISION OF THE COMMISSION WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND WAS IN ACCORDANCE WITH LAW IN THAT APPELLANT DID NOT RECEIVE A MEANINGFUL HEARING BEFORE THE COMMISSION.
 II. THE LOWER COURT ERRED IN FINDING THAT THE COMMISSION'S ORDER OF REVOCATION WAS SUPPORTED BY RELIABLE, PROBATIVE AND SUBSTANTIAL EVIDENCE AND WAS IN ACCORDANCE WITH LAW.
Appellant's assignments of error are interrelated and, therefore, will be addressed together. Appellant's assertions set forth issues of fact and law. In reviewing the commission's order in an R.C. 119.12 appeal, a court of common pleas is required to affirm if the commission's order is supported by reliable, probative and substantial evidence and is in accordance with law. VFW Post 8586 v. Ohio Liquor Control Comm. (1998),83 Ohio St.3d 79, 81. Appellant contends the commission's order was not supported by reliable, probative and substantial evidence. As to this issue, this court determines only if the common pleas court abused its discretion, which encompasses not merely an error of judgment, but perversity of will, passion, prejudice, partiality or moral delinquency. Pons v. Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621.
Appellant also contends that she was not afforded a meaningful hearing before the commission. Specifically, appellant asserts the commission should not have allowed her husband, a non-lawyer, to represent her at the hearing. Additionally, appellant contends that the three-minute "hearing," at which no testimony was taken, was insufficient. Issues involving procedural requirements for hearings present questions of law. Goldman v. State Med. Bd. of Ohio (1996), 110 Ohio App.3d 124, 128, discretionary appeal not allowed in (1996), 77 Ohio St.3d 1411 . On questions of law, our review is plenary. Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd. (1992), 63 Ohio St.3d 339,343-344. We address the questions of law first.
Appellant contends the commission should not have permitted her husband to represent her interests at the hearing as he had no legal authority to do so and that such representation would constitute the unauthorized practice of law. In support of such assertions, appellant cites R.C. 119.13, which states:
 At any hearing conducted under sections 119.01 to 119.13
of the Revised Code, a party or an affected person may be represented by an attorney or by such other representative as is lawfully permitted to practice before the agency in question, but, * * * only an attorney at law may represent a party or an affected person at a hearing at which a record is taken which may be the basis of an appeal to court. * * * [Emphasis added.]
Ohio Adm. Code 4301:1-1-65(J) states that a record of the testimony shall be taken at all hearings before the commission. Hence, it would appear R.C. 119.13 mandates that only an attorney may represent a party or affected person at a commission hearing. However, for the reasons that follow, we conclude that it was not error for the commission to allow Mr. Lindner to admit to the charges against appellant.
In Disciplinary Counsel v. Molnar (1990), 57 Ohio Misc.2d 39, 40, the Board of Commissioners on the Unauthorized Practice of Law determined that the respondent, in representing permit holders in contested hearings before the commission, had engaged in the unauthorized practice of law. The respondent, a non-attorney, had held himself out and advertised his services as a representative of liquor permit holders and had engaged in activity that was generally considered the practice of law. Id.
In Worthington City School Dist. Bd. of Edn. V. Franklin Cty. Bd. of Revision (1999), 85 Ohio St.3d 156 ("Worthington"), various non-attorneys had prepared, filed and/or signed complaints before county boards of revision. The Supreme Court found that those non-attorneys who had prepared and filed complaints on behalf of their corporations had engaged in the unauthorized practice of law and, therefore, the Board of Tax Appeals properly determined that it lacked jurisdiction over the matters. Id. at 160-161. In addition, the Supreme Court noted that corporations cannot maintain litigation in propria persona or appear in court through an officer not admitted to the practice of law. Id. at 160.
The above cases are distinguishable. In Molnar and Worthington, the non-attorneys had engaged in activity that was generally considered the practice of law. This is not the case here. Mr. Lindner, who was the manager of the permit premises, merely showed up at the hearing to admit to the charges lodged against his wife/appellant, the permit holder. He was not there to "represent" appellant in any way that could be considered legal representation such that an attorney would do.
The practice of law embraces the preparation of pleadings and other papers incident to actions and special proceedings and the management of such actions and proceedings on behalf of clients and, in general, all advice to clients and all action taken for them in matters connected with the law. Cincinnati Bar Assn. v. Estep (1995), 74 Ohio St.3d 172, 173, quoting Land Title Abstract Trust Co. v. Dworken (1934),129 Ohio St. 23, paragraph one of the syllabus. Mr. Lindner simply did not intend to nor did he engage in such activities. Therefore, the mandate in R.C. 119.13 is not implicated, and there was no error at the commission hearing in regard to Mr. Lindner's presence there and his admission to the charges on behalf of appellant.
As to the summary nature of the hearing, there was no error. The hearing before the commission lasted about three minutes. Mr. Lindner admitted to the charges and stated that the employees of the bar "realize that there will not b[e] anything of this nature in this business again." (Tr. 5.) The commission admitted the investigator's report, which was unsworn and unauthenticated. No testimony was taken.
In B N Ent., Inc. v. Ohio Liquor Control Comm. (1999),131 Ohio App.3d 394, 397-398, discretionary appeal not allowed in (1999), 86 Ohio St.3d 1454, this court found the commission's order was not supported by reliable, probative and substantial evidence where the evidence consisted only of an unsworn, unauthenticated investigative report. This court cited Goldman, supra at 129, wherein this court stated that from a due process standpoint, something more than reliance on the agency's preliminary investigative reports must be considered and that some sort of reliable evidentiary review, including the sworn testimony of the investigator as well as a more considered review of the circumstances, was required. See, also, Dayton Tavern, Inc. v. Ohio Liquor Control Comm. (1999), 134 Ohio App.3d 816, 820-821.
Despite the summary nature of the proceedings in the case at bar, there was no error. The key difference between this case and B N, Goldman and Dayton Tavern is that in the case at bar, appellant admitted to the charges against her. In Department of Liquor Control v. Santucci (1969),17 Ohio St.2d 69, 70, the permit holder admitted to the charges against him. The Supreme Court held:
 Where the holder of permits to sell alcoholic beverages is charged with the violation of law and regulations of the Liquor Control Commission on the permit premises, his plea of guilty to such charges, knowingly and voluntarily made at the hearing thereon before the commission, is equivalent to testimony on his part that the facts set forth in such charges are true * * *. On the permit holder's appeal to the Court of Common Pleas under Section 119.12, Revised Code, that court may properly determine, within the spirit and objectives of the statute, that the orders against him by the commission were supported by "reliable, probative and substantial evidence." [Id. at syllabus.]
The Supreme Court further stated, in analogizing commission hearings to criminal cases, that a plea of guilty obviates the necessity of a trial and the presentation of evidence to establish the guilt of the accused, and no duty is imposed on the trial court to require or examine evidence to determine whether the evidence justified the accused's guilty plea. Id. at 71, quoting McAuley v. Maxwell (1963), 174 Ohio St. 567, 568. The Supreme Court stated that when a liquor permit holder admits a violation of the law and presents no evidence in mitigation of the penalty or otherwise, it is not incumbent upon the commission to call for and consider other evidence before assessing a penalty within its authority. Santucci at 72. This principal has been applied in subsequent cases involving the commission. See, for example, FOE Aerie 0423 v. Liquor Control Comm. (May 8, 2000), Fayette App. No. CA99-01-003, unreported; Jaffal Food Market, Inc. v. Liquor Control Comm. (Oct. 1, 1998), Cuyahoga App. No. 74449, unreported.
Appellant states that she and her husband did not appreciate the potential severity of the charges against her. However, appellant was notified prior to the hearing that there would be a determination of whether her permit(s) should be suspended or revoked or a forfeiture should be ordered. She was notified that she could have counsel present at such hearing. Appellant chose not to have counsel at the hearing and admitted to the charges. After the order was issued, appellant filed a motion for reconsideration of the penalty only, with the benefit of counsel. This motion was denied. In short, appellant knowingly and voluntarily admitted to the charges.
Again, appellant, through her husband and manager, admitted to the charges against her. Therefore, it was not incumbent upon the commission to call for and consider additional evidence before assessing the penalty of revocation, which was within its authority. Hence, appellant's assertion that she was denied a meaningful hearing is not well-taken.
Appellant next contends that the order was not supported by reliable, probative and substantial evidence. Specifically, appellant asserts that the investigator's report was insufficient with regard to the alleged payoff records, that possession of payoff records is not a gambling offense and that there was no evidence that appellant profited from the alleged gambling. We need not address appellant's assertions with regard to the evidence as appellant admitted to the charges. As already discussed, appellant's admission to the charges was the equivalent of testimony on her part that the facts set forth therein were true. Hence, appellant cannot now complain that the evidence against her was insufficient. Indeed, under Santucci, the commission needed no evidence to support its penalty once appellant admitted to the charges.
Notwithstanding the above, the common pleas court did not err in finding the commission's order was supported by reliable, probative and substantial evidence. The investigator's report showed that football spot cards and winning football spot cards were found on the permit premises along with cash attached to some of these cards. The inventory list generated from execution of a search warrant included betting cards, tickets and slip(s) and payoff/out slips with cash attached to some of these. This would have constituted sufficient evidence under Ohio Adm. Code 4301:1-1-53(B) to show that gambling devices were on the permit premises and had been used for gambling offenses as defined in R.C.2915.01(G).
Having properly found the commission's order was supported by reliable, probative and substantial evidence, the common pleas court had no authority to modify the penalty lawfully imposed by the commission. See Henry's Café, Inc. v. Bd. of Liquor Control (1959),170 Ohio St. 233, paragraph two and three of the syllabus, which read:
 2. On appeal from an order of an agency (as defined in Section 119.01, Revised Code), to the Court of Common Pleas, the power of the court to modify such order is limited to the ground set forth in Section 119.12, Revised Code, i.e., the absence of a finding that the order is supported by reliable, probative, and substantial evidence.
 3. On such appeal, the Court of Common Pleas has no authority to modify a penalty that the agency was authorized to and did impose, on the ground that the agency abused its discretion.
The case involving the Lindners emphasizes how harsh the effects of Henry's Cafe can be. As a practical matter, courts have no power to review penalties meted out by the commission. Thus, we have little or no ability to review a penalty even if it seems on the surface to be unreasonable or unduly harsh. Though she had no prior violations, appellant had her liquor license revoked, not suspended for a period of time. Perhaps the time to reconsider Henry's Cafe has arrived, but the Supreme Court of Ohio must be the court to do that reconsideration. We, as an intermediate appellate court, are required to follow the syllabus of Henry's Cafe unless or until such reconsideration occurs.
For all of the above reasons, the common pleas court did not err in concluding that the commission's order was supported by reliable, probative and substantial evidence and was in accordance with law. Accordingly, appellant's assignments of error are overruled.
Having overruled appellant's assignments of error, the judgment of the Franklin County Court of Common Pleas is affirmed.
 ___________________ TYACK, J.
BRYANT, P.J., and BROWN, J., concur.